UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| INTERNATIONAL ASSOCIATION OF HEAT & FROST INSULATORS & ALLIED WORKERS, LOCAL #135,<br><br>Plaintiff(s),<br><br>v.<br><br>THE LOCAL 135 JOINT APPRENTICESHIP & TRAINING COMMITTEE, et al.,<br><br>Defendant(s). | Case No.2:25-CV-1626 JCM (NJK)<br><br>ORDER |

Presently before the court is plaintiff International Association of Heat & Frost Insulators & Allied Workers, Local 135's ("Local 135" or "the union") motions for a temporary restraining order and preliminary injunction. (ECF Nos. 28, 29). Defendants Shane Striley, Jeremy Azevedo, Christopher Hooks, Thomas Brackett, and George Tuiaana filed a response (ECF No. 31), to which Local 135 replied (ECF No. 32).

**I.     Background**

On August 29, 2025, Local 135 filed the instant action for declaratory judgment and breach of fiduciary & statutory duties under the Employee Retirement Income Security Act ("ERISA"). Local 135 is a labor union within the meaning of "labor organization" under the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"). (ECF No. 29 at 4). The union sponsors The Local 135 Joint Apprenticeship and Training Committee ("JATC"). (*Id.*).

The JATC is governed by a trust agreement and the union's bylaws. (*Id.*; Exs. 5, 6). The JATC trust agreement provides that a "Union Trustee may be removed from office at any time and for any reason by an instrument in writing signed by the appropriate executive of the Union," and that "the party who designated such Trustee shall promptly designate a successor Trustee." (ECF No. 1, Ex. 5 §§ 5, 6).

Under the trust agreement, the JATC is governed by six trustees: three labor trustees are appointed by the union, and three management trustees are appointed by the Southern Nevada chapter of the Western Insulation Contractor's Association. (ECF No. 29 at 4).

In November 2024, the JATC adopted its own set of bylaws ("JATC bylaws"), allegedly to "harmonize" the trust agreement, union bylaws, and the JATC's history of "conduct and practices." (ECF No. 31 ¶ 8). These bylaws stated that "Local trustees will be ranked in quorum/voting in the ranking of local body received votes." [sic] (ECF No. 1, Ex. 3 at Art. VII § 5). It also contained the statement that "Three local trustees and one alternative will be elected to sit on the JATC Board every 3 years." [sic] (*Id.* at § 3).

In May 2025, Gerald Bragg, the president of Local 135, wrote and delivered a letter purporting to remove three union trustees—Larry Valoaga, Shane Striley, and Andres Altimirano—and alternate trustee George Tuiaana, from the JATC. (ECF No. 29, Ex. 3). Bragg simultaneously appointed their successors, Daniel Haguewood, Larry Valoaga (reappointed), and himself. (ECF No. 1 ¶ 35).

Striley filed internal union charges against Bragg, alleging he violated his duties to the union by removing him. (ECF No. 29 at 6). The charges went to the international union president for determination as to whether they would go to trial. (*Id.* at 6–7). The president dismissed the charges by letter on September 2, 2025. (*Id.* at 7; Ex. 7 at 1–2).

- 2 -

Plaintiff Local has filed for a TRO and a preliminary injunction based on the trustees' refusal to accept their removal, in advance of the union's upcoming December 9, 2025, board meeting. (ECF No. 29 at 5–9). The court ordered expedited briefing from the parties, (ECF No. 30), and now executes the following decision.

## II.     Legal Standard

Federal Rule of Civil Procedure 65 governs temporary restraining orders ("TRO") and preliminary injunctions. Fed. R. Civ. P. 65(b)(1)(A). TROs and preliminary injunctions are extraordinary remedies meant to "preserve the status quo" and "prevent irreparable loss of rights prior to judgment." *Estes v. Gaston*, No. 2:12-cv-1853-JCM-VCF, 2012 WL 5839490, at *2 (D. Nev. Nov. 16, 2012); *see also Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). The standard for granting a TRO is "substantially identical" to the standard for granting a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

The court considers the following elements in determining whether to grant preliminary injunctive relief: (1) a likelihood of success on the merits; (2) a likelihood of irreparable injury if preliminary relief is not granted; (3) balance of hardships; and (4) advancement of the public interest. *Winter v. N.R.D.C.*, 555 U.S. 7, 20 (2008); *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1319 (9th Cir. 1994). The party seeking injunctive relief must satisfy each element.

There are two kinds of injunctions: mandatory and prohibitive. Mandatory injunctions go beyond maintaining the status quo and are disfavored by the courts. *Stanley v. Univ. of S. California*, 13 F.3d, 1313, 1320 (9th Cir. 1994). When the movant seeks a mandatory injunction, it must make a heightened showing of the *Winter* factors. *See Dahl v. HEM Pharmaceuticals Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993). Relief should be denied unless the facts and law clearly

favor the moving party. *Id.* Mandatory injunctions "are not granted unless extreme or very serious damage will result and are not issued in doubtful cases." *Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979).

### III. Discussion

As a threshold matter, the court finds it appropriate to decide this motion without having held an evidentiary hearing or heard oral argument. In the Ninth Circuit, whether to hold an evidentiary hearing or hear oral argument on a preliminary injunction is a matter of the district court's discretion. *See, e.g.*, *Stanley*, 13 F.3d at 1326 (citations omitted) (refusal to hold a preliminary injunction hearing "is not an abuse of discretion if the parties have a full opportunity to submit written testimony and to argue the matter.").

Here, the parties have not requested oral argument or an evidentiary hearing as to the request for preliminary injunction. *See id.* (noting the failure to request an evidentiary hearing may constitute waiver). Additionally, the grounds for granting or denying a TRO are substantively the same as for a preliminary injunction. After reviewing briefings from the parties, the court finds there are no disputes of fact material to the request for preliminary relief that would necessitate an evidentiary hearing. For those reasons, the court finds ruling on both the TRO and preliminary injunction is appropriate in this case.

Local 135 seeks a mandatory injunction. At its heart, the requested injunctive relief would require Striley and Tuianna to vacate the JATC trustee positions. This is an affirmative act, requiring a higher standard of scrutiny in the court's *Winter* analysis. *See Dahl*, 7 F.3d at 1403.

The court finds that, based on the facts alleged in the amended complaint and the applications for TRO and preliminary injunction, Local 135 fails to demonstrate any of the *Winter* factors.

- 4 -

A. Likelihood of Success on the Merits

The court first considers the parties' arguments regarding the governing documents. Then, it considers whether Local 135 is likely to succeed on the merits of its breach of fiduciary duty claim at trial. The court finds that the documents are ambiguous, which weighs against granting a TRO or preliminary injunction. *See Winter v. N.R.D.C.*, 555 U.S. at 20.

*1. Governing documents*

Local 135 and JATC are governed by the trust agreement and union bylaws. (ECF No. 29, Ex. 2, ECF No. 29 at 4).

The trust agreement is the controlling document for the operation of the trust. *See NLRB v. Amax Coal Co.*, 453 U.S. 322, 331–34 (1981); *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 223 (1986) (looking first to the express terms of the trust agreement and the plan); *see also Concrete Pipe & Prods. V. Constr. Laborers Pension Trust*, 508 U.S. 602, 641–42 (1993) (same). Courts look to the plain language of the trust agreement. *E.g., Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 223 (1986). They do not "artificially create ambiguity where none exists." *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir. 1990) (quoting *Allstate Ins. Co. v. Ellison*, 757 F.2d 1042, 1044 (9th Cir. 1985)).

Likewise, a labor union's bylaws govern the "rights, powers, obligations and duties of the Brotherhood, the local unions, and the members." *Carpenters & Joiners v. Moore*, 206 Va. 6,8 (S. Ct. Va. 1965); *see also Coronado Coal Co. v. UMWA*, 268 U.S. 295, 304 (1925).

The plain language of the trust agreement provides for removal of a union trustee "by an instrument in writing signed by the appropriate executive of the Union." (ECF No. 1, Ex. 5 § 5). This clause is ambiguous: it could be read as the appropriate executive signing off on removal that the union body has approved, or as the delivering of the letter serving as the removal itself.

Local 135's bylaws do not provide clarity on this issue. Article IV, Section 1 states that the President "Chairs Union Meetings and appoints committees." (ECF No. 29, Ex. 6 at Art. IV, § 1). Yet, within the same Article, the bylaws state that committee members are "Appointed by the Chair," without explanation as to whether this would be the President, in his position as Chair of union meetings, the Vice President, in his position as Chair of E-Board Meetings, or the Chair of the JATC. (*Id*. at §§ 1, 2, 11).

Further ambiguity as to whether JATC officers are appointed or elected arises from the title of Article IV and the preceding chapter. Article IV governs "officers," under which the JATC committee is listed, and Article V governs the election of officers. (*Id.* at Arts. IV, V). The parties agree that elections have occurred, though their exact function is debated. Defendant trustees argue that JATC members have been elected by a secret ballot of the union membership since the formation of the JATC, while Local 135 claims that such election merely informs the president's choice. (ECF No. 32 at 10; ECF No. 31 at Ex. 1 ¶ 6).

### 2. *Breach of Fiduciary Duty claim*

Under the heightened standard of scrutiny for a mandatory injunction, the court finds that Local 135 is not likely to succeed on the merits of its breach of fiduciary duty claim. *See* 29 U.S.C. §§ 409, 502(a)(3), 1104(a)(1)(A) and (D). To state a claim for breach of fiduciary duties under ERISA, Local 135 must establish that (1) the defendants were plan fiduciaries, (2) defendants breached their fiduciary duties, and (3) the breach caused harm to Local 135. *Friend v. Sanwa Bank Cal.*, 35 F.3d 466, 469 (9th Cir. 1994); *Trs. Of the Constr. Indus. & Laborers Health & Welfare Trust v. Vasqeuz*, 2011 U.S. Dist. LEXIS 112041, at *12 (D. Nev. Sept. 29, 2011).

Considering the ambiguous nature of the governing documents, Local 135 cannot establish that defendants breached their fiduciary duties.

- 6 -

Even if the governing documents were clear, Local 135 also fails to establish the harm element of the breach of fiduciary duty claim. Local 135 pleads that the defendant trustees' breach of their fiduciary duties has caused Local 135 harm to the trust by way of an inability to conduct meetings with the "proper" trustees or interview and select a new class of apprentices. (ECF No. 29 at 18). Defendant notes that there is not an immediate plan or need to select a new class of apprentices; the process usually begins in the spring. (ECF No. 31 at 7).

It is foreseeable that the need for a new class will arise before trial, which has not yet been scheduled. (*See* ECF No. 25). However, defendants proffer a solution, under which Striley, Valoaga, Bragg, and Haguewood would all be required to unanimously vote on recommended apprenticeship candidates, pending the outcome of the case. (ECF No. 31, Ex. 1 ¶¶ 39, 40). The court need not intervene in such a case. Therefore, Local 135 fails to demonstrate the third element of breach of fiduciary duty.

The court finds, based on the pleadings and evidence presented, that Local 135 is not likely to succeed on the merits at trial as to its claim of breach of fiduciary duty.

B.  Irreparable Harm

Local 135 must demonstrate that the harm alleged is imminent and irreparable to merit granting a TRO or preliminary injunction at this time. It does not.

Local 135 argues that the Union will suffer irreparable harm if an injunction does not issue due to defendants Striley and Tuiaana refusing to accept their removal from the JATC. As a result of their refusal, Local 135 claims that the JATC cannot turn over debated items on its agenda and is hindered from interviewing a new class of apprentices. (ECF No. 32 at 13).

Local 135 further claims that the apprentice program is the "chief function of the trust," and a continued stalemate on this front will result in harm in the form of reputational damage, an

inability to select a new class of apprentices, and the loss of market share by union and signatory contractors that rely on the program for skilled contractors. (ECF No. 29 at 20).

The court is not persuaded that the harm alleged by Local 135 rises to the heightened level required to permit a mandatory TRO or preliminary injunction. Local 135 alleges that it is hindered from interviewing a new class of apprentices, but defendants declare that there is no present or expected need for another class of apprentices. (ECF No. 31 at 7). Indeed, the JATC just sat a new class in August, and defendants explain that sitting another class at the December 9, 2025, meeting would only increase the number of out-of-work apprentices and potentially harm overall morale of the apprentice workforce. (*Id.*; Ex. 1 ¶ 38).

Local 135's argument as to market share fails. There is no need for a new class of apprentices at this time.

There is no clear evidence that the trustees are prevented from conducting business or that they lack oversight. Defendants attest that new business items have been discussed and debated during the pendency of this litigation. (ECF No. 31 at 22). The parties also appear to disagree whether Haguewood and Bragg have attended any meetings since the purported removal. (*Id.*, Ex. 1 ¶ 28; ECF No. 32 at 13). Indeed, the minutes from May 6, 2025, clearly state that they were in attendance and participated in the meeting. (ECF No. 31, Ex. 2).

Moreover, Local 135 fails to provide clear evidence of reputational harm. Local 135 attempts to argue, with citation to a series of cases from the Southern District of New York, that there is irreparable injury in the form of reputational damage merely because defendants Striley and Tuianna continue to hold themselves out as trustees. *See, e.g.*, *Partenza v. Brown*, 14 F. Supp. 2d 493, 498–499 (S.D.N.Y. 1998) (holding continuing oneself out as trustee despite removal "arguably damages the reputation and image of the Joint Council, the Executive Board, and the

individual plaintiffs."). The court does not find this bare-bones assumption of harm persuasive, particularly considering the heightened pleading standard applicable here.

Notably, Local 135 is contributing to the potential confusion it protests. Its website continues to display Striley and Tuiaana as trustee and alternate trustee (without reference to Bragg and Haguewood as trustees). (ECF No. 31, Ex. 4). If Local 135 is concerned about public confusion and reputational harm, it could remove Striley and Tuiaana from the website.

This factor weighs against granting a TRO or preliminary injunction.

### C. Balance of Hardships

Irreparable harm and likelihood of success on the merits have not been shown. Accordingly, the balance of hardships weighs against granting a TRO or preliminary injunction at this time.

### D. Public Interest

Local 135 argues that there is a strong public interest in the continued operation of ERISA-governed entities. (ECF No. 29 at 22). Congress enacted ERISA to ensure uniform and reliable plan governance under federal law. Local 135 claims that without a temporary restraining order, Local 135 would not be able to operate because it would not have a quorum and would not be able to elect and train a new class of apprentices, which is one of its primary functions. (*Id.*). This contention assumes that Local 135's "success on the merits" argument is tenable. It is not. This factor weighs against issuing a temporary restraining order or preliminary injunction.

Accordingly, Local 135's motion does not satisfy the requirements of a TRO or preliminary injunction.

. . .

**IV.    Conclusion**

Accordingly,

IT IS ORDERED, ADJUDGED, and DECREED that plaintiff Local 135's motion for a temporary restraining order (ECF No. 29) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that plaintiff Local 135's motion for a preliminary injunction (ECF No. 28) be, and the same hereby is, DENIED without prejudice.

DATED December 8, 2025.

_____
UNITED STATES DISTRICT JUDGE